**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **RUBEN RAMIREZ** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-11-CV-18-PRM** |
| | § | |
| **EL PASO PSYCHIATRIC CENTER,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT**</u>

On this day, the Court considered Defendant El Paso Psychiatric Center's (EPPC) "Motion to Dismiss and for Summary Judgment" (ECF No. 20) [hereinafter Motion], filed on October 19, 2011; Plaintiff Ruben Ramirez's (Ramirez) "Response to Defendant's Motion for Summary Judgment" (ECF No. 29) [hereinafter Response], filed on November 10, 2011; and EPPC's "Reply in Support of Defendant's Motion to Dismiss and for Summary Judgment" (ECF No. 32) [hereinafter Reply], filed on November 21, 2011 in the above-captioned cause. After due consideration, the Court is of the opinion that the Motion should be granted and that Ramirez's claim against EPPC for retaliatory termination of employment should be dismissed.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In May of 2009, Ramirez accepted a position with EPPC as its Chief Accountant. Resp. 1; Resp. App. 1 [hereinafter Plaintiff's Factual Appendix]. David Osterhout (Osterhout), Assistant Superintendent of EPPC, hired Ramirez for the position, and was Ramirez's immediate supervisor thereafter. Resp. 1; Mot. Ex. A-9.

On November 3, 2009, Osterhout conducted a six-month evaluation with Ramirez.  Mot. Ex. A at 103 [hereinafter Ramirez Deposition].  Three days later, Osterhout revised his six-month evaluation in response to objections made by Ramirez.  Mot. Ex. A-13 [hereinafter Six-Month Evaluation].  In the revised version, Osterhout explained that Ramirez was performing below expectations, but would be given three months to improve since Ramirez's assigned trainer had been deficient.  *Id.*  Additionally, Ramirez was instructed to meet a number of specific deadlines in completing certain tasks.  *Id.*  Later that same month, Osterhout engaged in "performance counseling" with Ramirez, the contents of which were memorialized in a document dated November 23, 2009.  Ramirez Dep. 99.  In the document, Osterhout noted that Ramirez had a "lack of positive communication" with his co-workers, including a history of arguments with the Reimbursement Manager, Cynthia Gurrola (Gurrola).  Mot. Ex. A-12 [hereinafter Work Rules Violation].

On December 14, 2009, Ramirez filed an internal complaint against Osterhout addressed to Osterhout's supervisor, Superintendent Zulema Carrillo (Superintendent Carrillo).  Mot. Ex. A-17.  Therein, Ramirez complained of the "unfair accusations" made against him regarding his "behavior and professionalism,"[1] objected to the Work Rules Violation, and asserted that he had "been set-up for failure."  *Id.*

On January 8, 2010, Osterhout issued a "First-Level Reminder" to Ramirez as part of EPPC's disciplinary policy.  Mot. Ex. A-21 [hereinafter First-Level Reminder].  Therein, Osterhout asserted that, after repeated reminders and meetings, Ramirez had failed to complete the local version of the procurement card policy that Osterhout had tasked Ramirez with developing.  *Id.*  Osterhout indicated that if Ramirez failed "to correct the problem and maintain

---

[1]  Specifically, Ramirez argued that Osterhout "has continually blamed [him] for other staff members['] actions."  Mot. Ex. A-17.  He asserted that he had been "accused of calling people names and acting unprofessional when [he had] only been defending [himself]."  *Id.*

acceptable performance for the next three months, [he] may be placed on a higher level of formal corrective action." *Id.* On January 25, 2010, Osterhout and Ramirez had a "performance discussion," wherein Osterhout asserted that problems he had identified in the Six-Month Evaluation had not been remedied and that Ramirez had failed to meet several of the deadlines that Osterhout set forth in the Sixth-Month Evaluation. Mot. Ex. A-26.

On February 8, 2010, Ramirez filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that he had been treated unfairly and noting that he had been "advised" by a co-worker that Osterhout mocked his accent.[2] Resp. Ex. C [hereinafter EEOC Discrimination Complaint]. Therefore, Ramirez alleged that he had been subjected to discrimination because of his national origin in violation of Title VII. *Id.*[3] On February 11, 2010, Osterhout issued a "Second-Level Reminder" to Ramirez, citing Osterhout's dissatisfaction with the timeliness and sufficiency of the local procurement card policy that Osterhout had previously instructed Ramirez to draft. Mot. Ex. A-29 [hereinafter Second-Level Reminder].

On March 3, 2010, Ramirez filed a second internal complaint against Osterhout addressed to Superintendent Carrillo, alleging that Osterhout was "setting [Ramirez] up for . . . eventual termination, all in retaliation for [Ramirez's EEOC Discrimination Complaint] and because [Osterhout] thinks less of Mexicans." Pl.'s Factual App. 5. On March 16, 2010,

---

[2] According to Ramirez, a co-worker, Faviola Ortiz (Ortiz), told Ramirez "[t]hat Mr. Osterhout was making fun of [him] for [his] accent." Ramirez Dep. 162. Ortiz was the only person who ever brought this issue to Ramirez's attention. *Id.* at 162. During his deposition, Ramirez could not recall whether he asked Ortiz if she thought Osterhout had mocked Ramirez more than once, nor could he recall whether he asked any "follow-up questions" of Ortiz. *Id.* at 162.

In a sworn affidavit dated October 13, 2011, Ortiz denies having ever heard Osterhout mock Ramirez's accent and she denies having ever told Ramirez that Osterhout "made fun" of Ramirez's accent. Mot. Ex. H.

[3] Ramirez is Mexican by birth and speaks with a Mexican accent. Pl.'s Factual App. 1.

3

Osterhout issued a "Third-Level Reminder," asserting that Ramirez failed to meet deadlines in a timely manner, ignored directives, and performed inadequate audits.  He also indicated that it was the final reminder before termination.  Mot. Ex. A-36 [hereinafter Third-Level Reminder]. On March 17, 2010, Ramirez filed a third internal complaint against Osterhout alleging that Osterhout continued to retaliate against him for his EEOC Discrimination Complaint.  Resp. Ex. F.  Ramirez argued that all of the performance-related criticisms that Osterhout had directed at him were "fabricated."  *Id.*

On July 16, 2010, Osterhout issued a "Notice of Possible Disciplinary Action."  Resp. Ex. A-42 [hereinafter Notice].  The Notice catalogued a history of Ramirez's alleged past performance violations and added new allegations stemming from an audit of EPPC which had been conducted by the Department of State Health Services (DSHS).  *Id.*  In the Notice, Osterhout instructed Ramirez to present any rebuttal information he might have by 11:00 a.m. on July 19, 2010.  *Id.*  On July 19, 2010, the date upon which he was to have filed his rebuttal, Ramirez made his fourth internal complaint against Osterhout, again asserting that Osterhout was trying to "set [Ramirez] up for a retaliatory termination."  Resp. Ex. G.  Ramirez also alleged that the new allegations[4] were for performance failures falling outside of his job responsibilities. *Id.*  Further, Ramirez believed that his opportunity to submit a rebuttal would be futile given that Osterhout had previously told him that Ramirez's employment would be terminated on July 19,

---

[4]  In the Notice, Osterhout asserts that new allegations were derived from the July 6 to July 9 audit.  Notice.  The new allegations included accusations that Ramirez failed to reconcile the "Trust Fund Accounting System," did not maintain a balanced "Trust Fund spreadsheet," and that there "were outstanding items on the reconciliation that were over 90 days old and some that were  over 270 days old."  *Id.*

2010 if he did not resign.[5]  *Id.*  That same day, on July 19, 2010, Osterhout issued a "Notice of

Disciplinary Action" terminating Ramirez's employment, repeating the allegations and reasons

that he provided in the Notice.  Mot. Ex. A-44 [hereinafter Termination Letter].

On December 3, 2010, Ramirez filed his "Original Complaint" in the 205th Judicial

District Court of El Paso County, Texas.  Notice of Removal 1, Jan. 13, 2011, ECF No. 1.  EPPC

removed the case to federal court on January 13, 2011.  *Id.*  In his "Original Complaint,"

Ramirez alleges a variety of claims against EPPC.  *Id.* at ECF No. 1-4 [hereinafter Complaint].

Ramirez has since withdrawn all claims except one.  Resp. 1, 14.  His sole remaining claim is

that EPPC violated Title VII of the Civil Rights Act of 1964 by unlawfully terminating his

employment in retaliation for the EEOC Discrimination Complaint that Ramirez had filed.[6]  *Id.*

In its Motion, EPPC argues that Ramirez has failed to establish a prima facie case of

retaliation, which would merit that summary judgment[7] be granted in its favor.  Reply 1.

---

[5]  Osterhout states that, he "may have said something like that," explaining that "the termination
would come . . . if the rebuttal is not honored by me, my supervisor, the lawyer and the HR
people."  Osterhout Dep. 65.

[6]  On August 2, 2010, Ramirez filed his second EEOC complaint.  Pl.'s Factual App. 11;  Resp.
Ex. D (hereinafter EEOC Retaliation Complaint).  Therein, Ramirez asserted that Osterhout
retaliated against him for filing his earlier EEOC Discrimination Complaint.  Resp. Ex. D.  It is
undisputed that the EEOC Retaliation Complaint is procedurally adequate to support Ramirez's
remaining claim.  Mot. 21.  Moreover, EPPC's various other procedural objections are moot
given that Ramirez has narrowed his claims.  *See* Mot. 19 (arguing that only the retaliation claim
is not procedurally barred); Resp. 14 (contending that the "Court need not resolve" EPPC's
procedural objections because Ramirez only brings his retaliation complaint).
  Additionally, EPPC offered evidence of Ramirez's alleged pre- and post-EPPC
employment history in support of its Motion.  Although Ramirez lodged no objection to this
evidence in his Response, those materials have not been considered in the Court's determination
of the Motion.

[7]  Although EPPC brings its Motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(c),
and 56, its arguments and Ramirez's Response regarding the retaliation claim are exclusively
addressed to the Rule 56 summary judgment standard.  *See* Mot. 19 (stating that the retaliatory
discharge claim should be decided on the merits); Reply (limiting its scope to summary judgment
issues); Resp. (only discussing summary judgment issues).

Further, EPPC contends that, even if Ramirez has met such a burden, he has failed to adduce proper evidence that EPPC's proffered non-retaliatory reasons for terminating Ramirez's employment are merely pretextual.  *Id.*  Ramirez argues that EPPC's proffered reasons for terminating his employment are pretextual, specifically, that the reasons provided are "dishonest."  Resp. 8-13.

## II.   LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  While a court will resolve factual controversies or disputes in the non-movant's favor, it must do so "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis added).  A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *Id.*  (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

III.    **ANALYSIS**

A.      **Title VII Burden Shifting Framework**

Title VII makes it unlawful for an employer to retaliate against an employee because of the employee's participation in a protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56-57 (2006) (citing 42 U.S.C. § 2000e-3(a) (2006)). In the instant case, the Court follows the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). First, the plaintiff must "establish a prima facie case of retaliation." *Id.* (citations omitted). To do so, the "the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.* (citations omitted). Next, "[i]f the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, . . . nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* (citations omitted). Finally, "[i]f the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose." *Id.* (citations omitted).

Where, as here, the issue is pretext, the plaintiff must prove that the "protected conduct 'was a "but for" cause of the adverse employment decision.'" *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 129 (5th Cir. 2011) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 2011)). A "plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" *Id.* "Evidence is

substantial if it is of such quality and weight that reasonable and fair-minded [individuals] in the exercise of impartial judgment might reach different conclusions." *Id.* (citation and quotation marks omitted). Further, "[t]he Plaintiff must rebut *each* . . . nonretaliatory reason articulated by the employer." *McCoy*, 492 F.3d at 557 (citations omitted) (emphasis added).

### B.    Pretext

The Court will assume, without deciding, that Ramirez has established a prima facie case of retaliation. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004) ("[a]ssuming, without deciding," that a prima facie case of retaliation had been made where the pretext issue was ultimately dispositive). In response thereto, EPPC offers a number of reasons in support of its decision to terminate Ramirez's employment. Generally, EPPC alleges that Ramirez was unable to work "harmoniously" with others. *See* Termination Letter (stating that Ramirez "displayed a reluctance to work harmoniously with DSHS Internal Auditors" and had been repeatedly counseled for failing to "work harmoniously with fellow staff"). EPPC also alleges that Ramirez failed to perform tasks that were assigned to him in a timely and adequate manner. *See, e.g.*, *id.* (citing Ramirez's alleged failure to "reconcile[]" various accounts; delays in creating certain policies and in "sweep[ing]" the "Treasury Concentration Account"; and describing accounts as "not being swept properly"). Ramirez responds by asserting that EPPC's proffered reasons are "false" and "unworthy of credence." Resp. 8. Ramirez suggests that a reasonable trier of fact could conclude from EPPC's dishonesty that its stated reasons are merely pretextual. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) (holding that "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose").

8

### 1.   Third-Level Reminder[8]

To demonstrate Osterhout's dishonesty, Ramirez directs the Court to several alleged inconsistencies in the Third-Level Reminder, the final "reminder" issued by the EPPC before it issued its Termination Letter.  Resp. 9-10 (citing the Osterhout Dep.).  At his deposition, Osterhout testified that he issued the Third-Level Reminder because (1) Ramirez submitted a quarterly audit late, and that the audit was, in Osterhout's opinion, incorrect, and (2) Ramirez failed "to report a monthly expenditure projection to [the] central office" after Osterhout had gone "over it a couple of times" with Ramirez.  Osterhout Dep. 17, 19.

Ramirez contends that the audit "was entirely within Ramirez's discretion," implying that Osterhout's disagreement with the audit shows dishonesty given that Osterhout is not an accountant.  Resp. 9.  However, such an argument is flawed given that Osterhout, as Ramirez's supervisor, oversaw Ramirez's work and nothing in the record (other than Ramirez's assertion) indicates that Osterhout could not challenge the accuracy of Ramirez's findings.  Moreover, Ramirez ignores the Third-Level Reminder, in which Osterhout describes the audit as "weeks late" and that, despite Osterhout's request for revisions, Ramirez took no action for "nearly three months."  Third-Level Reminder.  Ramirez offers no evidence to suggest that Osterhout's complaints about the timeliness of the audit are specious.

Regarding the expenditure projections, Ramirez contends that an inconsistency revealed in Osterhout's deposition testimony demonstrates that Osterhout's complaints about the expenditure projections in the Third-Level Reminder are false and pretextual.  Resp. 9-10.  According to Ramirez's Response, Osterhout stated in his deposition that the Third-Level Reminder was issued, in part, because of Ramirez's failure to submit the *June* 2010 expenditure

---

[8]  Given Ramirez's reliance upon the Third-Level Reminder to illustrate pretext, the Court will address those issues in this section.  *See* Resp. 9-12.

9

projections as directed.  *Id.*  Relying exclusively on the Osterhout Deposition, Ramirez pointedly

notes that, since the Third-Level Reminder was issued in March 2010, several months prior to

June 2010, Osterhout's explanation cannot be true.  *Id.*   However, in the Third-Level Reminder,

Osterhout states that "on March 1, 2010, [Ramirez was] assigned the task of making an

expenditure projection and sending it to Central Office by March 5, 2010," a deadline that

Ramirez, admittedly, did not meet.  Third-Level Reminder; Mot. Ex. 34 (in an email, Ramirez

apologized to Osterhout for missing the deadline, explaining that it was "a tight week" for him).

Although Osterhout's deposition testimony regarding the June date presents an

improbable sequence of events and is inconsistent given the text of the Third-Level Reminder

that he issued, such inconsistency, does not, in context, raise suspicions of dishonesty or pretext.

The context of Osterhout's "June" statement in his deposition is important:  he twice stated that

he did not remember the date of the expenditure projection in question; his comments about the

expenditure program came while he had been asked to review a document unrelated to the

expenditure program or the Third-Level Reminder; and he was responding to a question in which

"June" was suggested by the questioner.  Osterhout Dep. 25-30.[9]  When placed in context, the

inference of dishonesty raised by Ramirez's reliance on the deposition testimony disappears.[10]

---

[9]     Q.     And you're thinking, based on your recollection, that it was the month of June?
        A.     I think that.  Yes.
Osterhout Dep. 30.

[10]  Additionally, EPPC has provided a series of emails from March 8, 2010, in which Osterhout
complains to Ramirez that the expenditure projections for March were late and inaccurate.  Mot.
Ex. A-34.

Ramirez also argues that he "was not made aware of the requirement for monthly expenditure projections";[11] therefore, disciplining him for failure to meet that requirement shows pretext.  Resp. 10.  Significantly, this argument only explains why the document was untimely, but it does not explain why Ramirez "sent an incorrect spreadsheet to [Osterhout] four times before it was finally accepted."  Third-Level Reminder.

As further proof of pretext, Ramirez states that "Osterhout admits to telling Ramirez when [Osterhout] imposed the third level write up that [Ramirez] was currently doing a good job, but would be [issued the Third-Level Reminder] anyway."  Resp. 10 (citing Osterhout Dep. 62).[12]  However, Osterhout supplemented his deposition to clarify his meaning, offering that Ramirez was "doing better at his job" overall, but that the Third-Level Reminder accurately reflected Ramirez's performance problems.  Mot. Ex. C-6.  While Osterhout's clarification may adequately explain his statement at his deposition and tends to undermine Ramirez's suggestion of dishonesty or pretext, Ramirez has failed to successfully attack the veracity of the deficiencies noted in the Third-Level Reminder.

## 2.    Termination Letter

Next, Ramirez argues that Osterhout's "two final excuses for Ramirez's termination are vacuous and not credible" and, therefore, that EPPC's stated reasons are mere pretext.  Resp. 11. Notably, Ramirez's assertion that Osterhout gave only two reasons for the final termination is

---

[11]  In an email dated March 8, 2010, Ramirez apologizes to Osterhout for the tardiness of the expenditure projections, explaining that Ramirez thought there was no need to send it every month.  Resp. Ex. A-34.

[12]      Q.    And then the second-to-last sentence of that paragraph says that you told him that
              this was too bad because [Ramirez] was currently doing a very good job, but
              regardless, he would be put on a third level.
              Do you recall saying that?
        A.    Yes.
Osterhout Dep. 62.

based solely on the Osterhout Deposition and is contradicted when the full record is considered. Osterhout did say that Ramirez's failure to reconcile various accounts and his failure to sweep the treasury accounts in a timely manner "led up to the notice of termination."  Osterhout Dep. 23.  However, three pages earlier in his deposition, Osterhout describes other performance failures he attributed to Ramirez relating to improper audits, concerning an expenditure projection, and regarding the untimely creation of policies.  Osterhout Dep. 20.  Moreover, the Termination Letter contains many other specific and general reasons for terminating Ramirez's employment.  Given that Ramirez bears the burden of rebutting *each* of EPPC's non-retaliatory reasons, *McCoy*, 492 F.3d at 557, his failure to discredit these other proffered explanations is critical to his case.[13]  In particular, Ramirez does not offer evidence that his alleged inability to work "harmoniously" with others was a pretextual or dishonest excuse.[14]

### C.      No But-For Cause

Given Ramirez's effort to show that EPPC's proffered reasons are falsified, and therefore pretextual, it is significant that EPPC's reasons for disciplining Ramirez are generally the same

---

[13]  Regarding the two reasons Ramirez does address, failing to perform bank reconciliations and failing to sweep the treasury accounts, Ramirez argues that these were not actually part of his job description.  Resp. 11.  However, Osterhout instructed Ramirez to perform bank reconciliations in the Six-Month Evaluation conducted on November 6, 2009.  Six-Month Evaluation.  Further, a mere disagreement about the proper scope of Ramirez's duties is insufficient to show pretext, even if the employer was wrong in its assessment.  *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) (stating that "a management lapse . . . does not amount to evidence of retaliation" (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.")).

[14]  In addition to the conflicts between Ramirez and Gurrola, Osterhout identifies Ramirez's inability to work with Adrienne Bides (Bides), who participated in an audit of the EPPC.  She "confirmed that [Ramirez] has not been cooperative in accepting" outside help and that Ramirez has "displayed a reluctance to work harmoniously with others."  Termination Letter.  In her affidavit, Bides states, "Ramirez was unhelpful . . . I stepped-in and did much of [his] work instead."  Mot. Ex. E.

both before and after Ramirez filed his EEOC Discrimination Claim.  For example, before the EEOC Discrimination Claim, Ramirez was cited for "lack of positive communication" with his "co-workers"; failure to reconcile various bank accounts; and failure to create a local procurement card policy as instructed.  Work Rules Violation; Six-Month Evaluation; First-Level Reminder.  After the EEOC Discrimination Claim, he was cited for not being cooperative with other auditors; failing to reconcile the Trust Fund Account; and completing a scheduled audit "weeks late" with unsatisfactory results.  Third-Level Reminder; Notice.

In short, there is insufficient evidence in the record that EPPC modified its expectations of Ramirez, or treated him differently, following his EEOC Discrimination Complaint.  Osterhout's criticism of Ramirez in the various evaluations, reminders, and other documents, do not differ in substance or nature between the pre- and post-EEOC Discrimination Complaint critiques; only the type of the task that was allegedly untimely performed, the name of the frustrated co-worker, and the title of the mismanaged account changed after Ramirez filed his EEOC Discrimination Complaint.[15]  Given the lack of evidence that EPPC changed its behavior toward Ramirez following his EEOC Discrimination Complaint, the Court concludes that

---

[15]  For these same reasons, Ramirez's attempt to base his proof of pretext, in part, on the "timing of the write ups," is unavailing.  *See* Resp. 13 (asserting that the temporal proximity between Osterhout's disciplinary actions and Ramirez's complaints combined with Osterhout's alleged dishonesty, create a factual dispute regarding the issue of pretext).  However, Osterhout began issuing disciplinary letters prior to Ramirez's allegations of discrimination and the pre-EEOC Discrimination Complaint letters are thematically consistent with the post-EEOC Discrimination Complaint letters.  Moreover, "temporal proximity standing alone" is not "sufficient proof of but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Additionally, temporal proximity combined with self-serving allegations is insufficient to defeat summary judgment.  *See McCoy*, 492 F.3d at 563 (granting summary judgment in favor of the defendant where the plaintiff's only evidence of retaliation was "her own self-serving conclusion and the temporal proximity" of her employer's adverse actions to her protected activity).

Ramirez has not provided sufficient evidence of but-for causation to create a genuine dispute of material fact.[16]

**D.      Nonretaliatory Reasons**

Pursuant to the principles developed by the Supreme Court in *Reeves*, even in a case where an employee has "set forth sufficient evidence to reject the employer's explanation" due to the falsity or dishonesty of such an explanation,[17] the employer would still be entitled to summary judgment under certain circumstances. *Reeves*, 530 U.S. at 148.  For example, "if the record conclusively revealed some other, [nonretaliatory] reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no [retaliation] had occurred," then summary judgment would still be appropriate.  *Id.*; *see Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001) (applying *Reeves* to a Title VII retaliation case); *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 575 (5th Cir. 2004) (acknowledging the applicability of *Reeves* to both motions for judgment as a matter of law and motions for summary judgment).

The record before the Court is replete with evidence that no retaliation occurred.  In addition to the pre-EEOC Discrimination Complaint evidence referenced above, the evidence

---

[16]  Ramirez's remaining evidence of retaliation is based on his own deposition, internal complaints that he filed, and his EEOC complaints. *E.g.* Ramirez Dep. 160 (asserting that he was fired in retaliation for making complaints of discrimination); Resp. Ex. G. (internal complaint dated July 19, 2010 alleging retaliation for Ramirez's "previous EEO activity"); Resp. Ex. D (EEOC complaint dated August 2, 2010 alleging retaliation as a result of Ramirez's EEOC Discrimination Complaint).  However, such self-serving allegations are insufficient to defeat summary judgment.  *Cf. Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (concluding that where an employee was discharged for alleged sexual harassment, the employee's own self-serving statements that he did not commit sexual harassment were insufficient to create a triable issue of fact that could survive summary judgment).

[17]  For the reasons already stated, such is not the case here.

associated with the Department of State Health Services audit conducted in July 2010 supports

the conclusion that EPPC lacked a retaliatory motive.  David Ramos, an auditor from the

Department of State Health Services, who assumed primary responsibility and supervised the

process stated that "[t]here were significant inaccuracies in the General Ledger and important

lapses in performing account reconciliations and other accounting controls."  Mot. Ex. G ¶ 4.

Regarding the trust fund, "the conditions showed a basic lapse in accounting accuracy."  *Id.*  ¶ 8.

Regarding both accounts, Ramos concluded that the ultimate responsibility for the deficiencies

lay with Ramirez.  *Id.*  ¶¶ 4, 8.[18]  In sum, the July audit, which immediately preceded the

Termination Letter, revealed significant performance failures that Osterhout and EPPC could

fairly attribute to Ramirez.  These performance failures provide independent evidence that no

unlawful retaliation occurred.[19]

---

[18]  Other accountants agreed.  Run Sundy, the Chief Accountant for Big Springs State Hospital, who assisted in the audit, concluded that Ramirez "was not making . . . basic entries into the General Ledger as he should have been" and that Ramirez was failing to do "basic accounting functions that an accountant should perform."  Mot. Ex. F. ¶ 3.  Another participant in the audit, Bides, the Financial Officer at Big Spring State Hospital, concluded that Ramirez was not properly reconciling accounts and was improperly paying bills with the result that "EPPC was over paying vendors."  Mot. Ex. E. ¶¶ 4-6.

[19]  Based on Ramirez's Complaint, his Response, and the record before it, the Court has determined that this is a pretext case, not a mixed-motive case.  In his Complaint, Ramirez requests a variety of damages, but none of those damages are of the type that would be available to him in a mixed-motive case under the present circumstances, except his request for attorney's fees.  *Compare* Complaint 2 (seeking recovery for "pecuniary losses, back pay, front pay . . . . compensatory damages [for] . . . mental anguish . . . . punitive damages) *with Smith v. Xerox Corp.*, 602 F.3d 320, 327 (5th Cir. 2010) (explaining that mixed-motive damages are limited to injunctive and declaratory relief, costs, and attorney's fees when the employer shows it would have taken the same action in the absence of the improper motive).  Additionally, the majority of Ramirez's argument and analysis in his Response is devoted to the pretext issue.  Resp. 8-13. Ramirez's lone reference to mixed-motive analysis comes in the form of one sentence noting that in the *McDonnell Douglas* framework, at the final stage, the "burden then shifts back to the plaintiff to show that the defendant's explanation is pretextual **or** otherwise show that his protected conduct was a motivating factor in the employment action."  *Id.*  3 (emphasis in original) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309, 312 (5th Cir. 2004)).  The *Rachid* court developed what it called the "modified *McDonnell Douglas* approach," wherein the plaintiff could also prevail in the final stage by showing, as an alternative to the pretext-type

IV.     **CONCLUSION**

In attempting to support his claim of pretext, Ramirez has attempted to cast doubt on the veracity of statements made by others.  However, he has failed to rebut significant evidence contradicting each non-retaliatory reason for his termination.  Moreover, this is not the case where a plaintiff has offered any testimony other than his own to support his allegations of retaliation; nor is it the case where an employer has failed to follow its policies addressing deficiencies in employee performance.  The Court is required to look for more than the mere suggestion that the employer is lying or dishonest in its stated reasons for terminating an employee.[20]  Otherwise, summary judgment could be refuted in every situation by such an assertion, whether correct or incorrect.  In the end, after the Court has examined the full record presented by the parties, there is no evidence, other than Ramirez's own testimony, that

---

analysis, that "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic."  376 F.3d at 312 (citation and quotations omitted).  Ramirez did not discuss the point or attempt to support the motivating factor analysis with argument or factual support.

Even if the Court employed the mixed-motive analysis, the result would be the same.  To prevail on a mixed-motive theory, the plaintiff must present evidence that an illegitimate reason was "a motivating factor, even if not the sole factor, for the challenged employment action."  *Smith*, 602 F.3d at 333.  For all of the reasons stated above, Ramirez has failed to show that filing his EEOC Discrimination Complaint was at least a motivating factor in EPPC's decision to fire him.

[20] Ramirez relies heavily on *Reeves*.  Resp. 3, 8, 11, 13.  The *Reeves* court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves*, 530 U.S. at 148.  However, a plaintiff must present sufficient evidence of dishonesty, mere accusations and superficial inconsistencies are insufficient.  *See Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004) (explaining that "the pretext inference described in *Reeves* is merely a permissive and not a mandatory inference") (citing *Reeves*, 530 U.S. at 148 (noting that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory"); *Johnson v. City of Denton Fire Dept.*, 354 Fed. Appx. 911, *2 (5th Cir. 2009) (unpublished) (noting that in *Reeves*, the plaintiff made a "'substantial showing'" that the employer's stated reasons were false and upholding summary judgment where there was not a "comparable showing").

Osterhout fabricated his explanations for terminating Ramirez's employment.  Therefore, Ramirez has failed to demonstrate that EPPC's reasons for terminating his employment are pretextual or that Ramirez's employment was terminated, in any way, because he engaged in a protected activity.  Accordingly, there is no genuine dispute of material fact and the Court will award summary judgment in favor of EPPC.

Accordingly, **IT IS ORDERED** that Defendant El Paso Psychiatric Center's (EPPC) "Motion to Dismiss and for Summary Judgment" (ECF No. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Ramirez's Complaint is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this **19th day** of **January, 2012**.

_____
**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**